UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-331-H

DEBORAH CRIDER                                                                              PLAINTIFF

V.

LIFE INSURANCE COMPANY OF NORTH AMERICA                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Deborah Crider, has appealed the denial of long-term disability benefits under an Employee Retirement Income Security Act ("ERISA") plan ("the Plan") administered by Defendant, Life Insurance Company of North America ("LINA").  Pending before the Court is Plaintiff's motion to compel discovery of certain materials beyond the administrative record.  Naturally, Defendants has objected on the grounds that such appeals are usually resolved on the administrative record alone.

The request raises the difficult question of whether and under what circumstances evidence outside the ERISA administrative record may be relevant to the issues on appeal.  Systemically, this is an issue which is arising more frequently as benefit plan administrators review disability determinations with the advice of outside consultants and experts.  Of course, plan administrators have every right and even an obligation to do so.  In some cases, however, the beneficiaries question the fairness of the entire process as well as the end result.  They seek evidence from outside the administrative record to support their claims.

Few appellate courts have yet been afforded the opportunity to address this problem.

Because these types of questions are unlikely to diminish, the Court has attempted to set out a principled way to analyze this and future cases.

I.

Plaintiff was a long time employee of Colgate-Palmolive Company. The company provided long term disability benefits to its employees under a group insurance plan. LINA underwrites, insures, and administers the insurance plan. ERISA governs all the issues arising from the administration of the plan.

On March 22, 2001, Plaintiff took a disability leave from Colgate. Under the LINA plan, Plaintiff was eligible for and received short-term benefits until September 13, 2001. After exhausting those benefits, Plaintiff applied for and received approval for long term disability benefits. From September 14, 2001 until September 14, 2003, LINA paid long term disability benefits based upon Plaintiff's inability to work in her "own occupation" as defined in the plan.

During 2002, Plaintiff was found eligible for Social Security disability benefits. LINA demanded that it was entitled to reimbursement of a portion of its payments from Plaintiff's social security benefits. Nevertheless, LINA continued to pay long term disability benefits based on it determination that the Plaintiff was disabled from "any occupation" as defined in the plan.

In 2004, LINA received information from Plaintiff's physician which seemed to authorize a return to work. Two years later, in July 2006, LINA obtained another functional capacity examination from HealthSouth, which is a regular LINA vendor. LINA then asked Regain Vocational Services to perform a transferable skills analysis to determine the jobs available from a person of her limitations. In reliance on these two assessments, the Disability

Questionnaire & Activities of Daily Living form completed by Plaintiff on March 14, 2006, office notes and medical information from two of Plaintiff's physicians, and a surveillance report dated May 25, 2006, LINA determined that Plaintiff was capable of performing four different categories of sedentary jobs. Consequently, on August 9, 2006, LINA terminated Plaintiff's long term disability benefits.

Plaintiff appealed this decision and submitted some supporting information, such as evidence of her social security disability determination, further medical information and evaluations completed by her own physicians. On June 14, 2007, LINA denied Plaintiff's appeal and this lawsuit followed.

After LINA filed the ERISA administrative record as a part of the record in this case, Plaintiff has sought additional discovery prior to submission on appeal. She has submitted interrogatories, requests for production of documents regarding matter outside the normal scope of an administrative record. Defendant objected to the requests and this motion followed. The Court must decide whether these requests are reasonable and appropriate under ERISA in these circumstances.

II.

A district court's role in reviewing the denial of benefits under an ERISA plan provides the proper context for this discovery dispute. Where an ERISA plan administrator has discretionary authority to determine eligibility for benefits, a district court considers an appeal of the denial under an "arbitrary and capricious" standard of review. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006)(internal citations omitted). Under such a standard, the Court will uphold an administrator's decision "if it is the result of a deliberate, principled

reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 665 (6th Cir. 2006) *cert. granted,* 75 U.S.L.W. 3368 (U.S. Jan. 18, 2008)(No. 06-923)[1] (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Thus, in these circumstances, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115(1989)(internal citations omitted). The Sixth Circuit has held that a court is "entitled to take into account the existence of a conflict of interest that results when . . . the plan administrator who decides whether an employee is eligible for benefits is also obligated to pay those benefits." *Glenn,* 461 F.3d at 666 (6th Cir. 2006).

In an action filed under ERISA seeking a review of a denial of benefits, the usual discovery rules do not apply. A Court's review of a decision to deny benefits is generally limited to the administrative record created during the initial decision making process. *Wilkins v. Baptist Healthcare Sys., Inc.* 150 F.3rd 609, 618 (6th Cir. 1998). This is a bedrock rule upon which ERISA decision making and review is grounded. It serves ERISA's purpose of providing "a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Perry v. Simplicity Eng'g,* 900 F.2d 963, 967 (6th Cir. 2000). To allow discovery outside the administrative record would seriously damage the entire conception of

---

[1]On January 18, 2008, the Supreme Court granted certiorari in *MetLife v. Glenn* to consider the following questions: "(1) Did Sixth Circuit err in holding, in conflict with two other circuits, [the] fact that claim administrator of Employee Retirement Income Security Act plan also funds plan benefits, without more, constitutes "conflict of interest" that must be weighed in judicial review of administrator's benefit determination under Firestone Tire & Rubber v. Bruch, 489 U.S. 101 (1989)? (2) If administrator that both determines and pays claims under ERISA plan is deemed to be operating under conflict of interest, how should that conflict be taken into account on judicial review of discretionary benefit determination?".

ERISA enforcement procedures.

Nevertheless, courts have recognized limited exceptions where "consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins*, 150 F.3d at 618. It is the discovery that may illuminate bias which concerns the Court here. Limited discovery may aid a court in determining how much weight to give presumed conflicts of interest. *See, e.g. Calvert v. Finance, Inc.* 409 F.3d 286, 292 (6th Cir. 2005)(noting the court would have a better feel for the weight to give the conflict of interest had there been discovery). Conflicts of interest or bias may arise from financial arrangements between plan administrators and independent reviewers (non-employee medical reviewers, consultants, functional capacity evaluators, etc.) which influence them to provide opinions or assessments favorable to the plan administrator. Conflicts may also arise from financial arrangements and income incentives for plan administrator employees. Because these reasonable discovery goals conflict with some of ERISA's statutory objectives, Courts have struggled to resolve them consistently.

### III.

On one hand, the Sixth Circuit has, on at least two occasions, admonished parities who failed to conduct discovery regarding the bias they alleged.[2] These comments suggest that

---

[2] *See, e.g., Calvert v. Firstar Finance, Inc.*, 409 F.3d 286 (6th Cir. 2005) where the Sixth Circuit observed:

> The Court would have a better feel for the weight to accord this conflict of interest if Calvert had explored the issue through discovery. While Calvert's counsel asserted that it was his understanding that discovery is never permissible in an ERISA action premised on a review of the administrative record, an exception to that rule exists where a plaintiff seeks to pursue a decision-maker's bias.

discovery of information concerning independent reviewers must be appropriate. However the Circuit has not clearly articulated such a rule nor has it the described its proper scope. In fact, while affirming a district court's denial of discovery, the Sixth Circuit recently observed that a "mere allegation of bias is insufficient to 'throw open the doors of discovery' in an ERISA case." *Likas v. Life Ins. Co. of North America*, 222 Fed. Appx. 481, 486 (6th Cir. 2007); *Putney v. Med. Mut. of Ohio*, 111 Fed. Appx. 803 (6th Cir. 2004)(denying discovery where there was no evidence of "procedural violations" and plaintiff failed to provide "any facts to support a claim that discovery might lead to such evidence" and noting that "mere allegation of bias is not sufficient to permit discovery."); *see also McInerney v. Liberty Life Assur. Co. of Boston*, 2007 WL 1650498 (W.D. Tenn. 2007)(denying discovery where the plaintiff, seeking information on the defendant insurer's relationship with reviewing physicians, failed to offer "any evidence to support even a colorable claim of procedural irregularities" and asserting "mere conclusory allegations").[3] The Court agrees with this word of caution. Nevertheless, courts seem not quite clear as to what showing is required to justify discovery to explore either the financial incentives of employees making decisions or the financial arrangements between the plan and third-parties.

One district court adopted a "middle of the road" approach to discovery that required a

---

409 F.3d at 293 n.2*; see also, Kalish v. Liberty Mutual/Liberty Life Assur. Co. Of Boston*, 419 F.3d 501, 508 (6th Cir. 2005)(rejecting a plaintiff's attempt to discredit the opinions on non-examining medical consultants on the basis of their bias towards the insurer because the plaintiff offered "only conclusory allegations of bias." The court noted that a conclusion that the reviewing expert had an incentive to make a finding in favor of the insurer required evidence of bias, which plaintiffs failed to provide because they had not "explored the issue through discovery." *Id.* (citing *Calvert*, 409 F.3d at 293 n.2)).

[3]The *McInerney* court interpreted the statement in *Likas* as recent confirmation "that merely alleging procedural regularities [sic] in broad, conclusory terms is insufficient to justify prehearing discovery." at *1. *McInerney* futher observed, "based on controlling precedent, the law in the Sixth Circuit remains that there is no automatic right to limited discovery as to procedural irregularities, and some initial showing of procedural irregularity must be presented before discovery will be allowed in ERISA cases." at *3-4.

6

showing of a reasonable basis for the discovery, rather than mere conjecture:

> [W]here a claimant 1) identifies specific procedural challenges concerning a fiduciary's decision to deny or terminate ERISA benefits, and 2) makes an initial showing to the court that he has a reasonable basis to make such procedural challenges, then good cause exists to permit the plaintiff to conduct appropriate discovery.

*Bennett v. Unum Life Ins. Co. of America*, 321 F. Supp. 2d 925, 933 (E.D. Tenn. 2004). Many discovery requests granted subsequent to *Bennett* were supported by at least a showing of a long-term relationship between the insurer and third-party reviewer. *See, e.g., Johnson v. Connecticut Gen. Life Ins. Co.*, 2007 WL 2993920 (N.D. Ohio 2007); *Bradford v. Metro Life Ins. Co.*, 2007 WL 956640 (E.D. Tenn. 2007)(allowing discovery regarding the relationship between defendant insurer and reviewing doctor where plaintiff showed the doctor was president and CEO of a company that contracts with the insurer); *Powell v. Hartford Fin. Servs. Group, Inc.*, 2007 WL 773732 (W.D. Ky. 2007)(granting discovery on a showing based on Westlaw search that revealed that the insurance company had used the same doctor 34 times).

The *Bennett* court permitted discovery where plaintiff submitted depositions of two former employees and internal documents indicating that the "corporate goal . . . to terminate as many ongoing claims and deny as many new claims as possible in order to save the company millions of dollars" put pressure on claims handlers and employee medical reviewers in the form of quotas and bonuses. *Bennett*, 321 F. Supp. 2d at 933-34. The depositions and documents satisfied the "initial showing" that court required for discovery to proceed. *See also Johnson*, 2007 WL 2993920 (N.D. Ohio)(granting "discovery about post-claim underwriting to determine whether claims underwriters' salaries are dependent on acceptance or rejection of claims" because the court "presumes a conflict in this case, and so such discovery is warranted.").

Here, Plaintiff seeks evidence which would never be a part of the administrative record.  At the very least, to justify requiring additional disclosure on appeal Plaintiff must overcome ERISA's statutory bias against it and must show a substantial need for it.

IV.

The Court proposes the following approach for consistent resolution of ERISA discovery requests. To prove abuse of discretion in the denial of benefits, a plaintiff must show something more than a conflict of interest or a bias.  It is not enough merely to suspect bias in the result. He must also articulate inconsistencies or unsubstantiated conclusions within the decision itself suggesting bias.  A plaintiff must demonstrate that the discovery could lead to evidence that, when considered together with other evidence could lead the Court to conclude that the denial of benefits was arbitrary and an abuse of discretion.  Therefore, a plaintiff's request for discovery must, at the very least, be premised upon evidence within the administrative record, which raises substantial questions of fairness.   Standing alone, the question of fairness need not meet the abuse of discretion standard, but when combined with evidence of bias, it may.

Another factor which the Court considers is that allowing documentary discovery of company-wide compensation and performance evaluations standards, or evidence of the amounts paid to third-party consultants, is not particularly intrusive.   The documents are easily available, and should not be particularly voluminous.   Nor does the discovery involve any particular confidentiality.  Discovery of individual compensation records is not appropriate.  Therefore, the burden upon Defendant is minimal.

Thus, where a plaintiff can demonstrate that the decision process itself raises substantial

questions of fairness, he should be entitled to pursue evidence that the discretion supposedly exercised was not that at all, but rather the exercise of a bias to denial. Certainly, evidence that a dual sponsor administrator compensated decision makers based upon the number of denials or the amount of money saved, would be highly relevant on the issue of bias and discretion.[4] Similarly, where substantial unfairness appears to exist, evidence of the third party consultants' financial arrangements with the administrator could help explain the reasons for it.

The strict requirement that one seeking outside discovery first demonstrate a substantial question of fairness will avoid opening the floodgates of ERISA discovery. This approach will provide a meaningful tool for claimants who have a legitimate reason for suspicion. It is much more fair and more realistic than requiring a claimant first to obtain evidence of bias before being
allowed to discover more of it. On the other hand, plaintiff still has the burden of showing a substantial need for the discovery. This requirement makes this approach no license for a discovery fishing expedition.

V.

Following these criteria, the Court must determine whether the record contains evidence of substantial unfairness, which combined with direct evidence of bias, may demonstrate an abuse of discretion or an arbitrary result. Here, Plaintiff alleges that in denying his appeal, LINA

---

[4] Such an arrangement by a plan fiduciary would surely amount to a breach of a fiduciary duty to plan participates.

failed to address fifteen (15) specific areas of his medical and occupational record.[5] The Court must review these charges to determine whether they raise substantial questions of the fairness about Defendant's review. Here, the Court is satisfied that they do.

First, Defendant's August 23, 2006 denial letter and the June 14, 2007 appeal denial did not address the Social Security Administration's finding that Plaintiff was "totally disabled." As the Sixth Circuit has recently emphasized, the failure to consider a contrary SSA finding "is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious." *Bennett v. Kemper Nat'l Servs., Inc., et. al.,* No. 06-2326 at 5 (6th Cir. 2008)(quoting *Glenn*, 461 F.3d at 669).

Second, Defendant did not provide HealthSouth, the company performing the 2006 functional capacity evaluation with Plaintiff's entire medical history, including her 2003 diagnosis of fibromyalgia by her treating physician Dr. Brown. Defendant is certainly entitled to have Plaintiff evaluated by independent functional capacity evaluators. Nevertheless, such evaluations raise great concern where documents relating to the plaintiff's medical history are

---

[5] More specifically, Plaintiff says that Defendant failed to discuss: (a.) Any of the medical evidence or reports presented in Plaintiff's appeal; (b.) The lack of any medical rebuttal of Plaintiff's functional capacity evaluations ("FCE") as completed by her license medical physicians; (c.) The prior Social Security findings of Plaintiff's total disability from any substantial gainful activity; (d.) The inconsistent interpretation of LINA's FCE reports relied upon in its denial versus its initial finding of Plaintiff's disability and payment of long term disability benefits for three (3) years; (e.) The inconsistency in LINA's prior representation to the Social Security Administration that Plaintiff was precluded from performing sedentary work; (f.) The inconsistency in LINA's denial versus its initial finding of Plaintiff's disability under any occupation and payment of long term disability benefits for three (3) years under this standard; (g.) The complete lack of medical evidence showing any improvement in Plaintiff's medical conditions; (h.) The inconsistency in the transferable skills analysis ("TSA") current findings versus prior findings under which long term disability benefits were paid for three (3) years; (i.) LINA's improper reliance on out-dated DOT occupational standards; (j.) LINA's inconsistent reliance on Social Security regulations for the purpose of the TSA but not for the purpose of disability; (k.) LINA's misrepresentation of Plaintiff's medical conditions for the purpose of obtaining FCE reports; (l.) LINA's misrepresentation of Plaintiff's work history for the purpose of obtaining TSA reports; (m.) LINA's failure to follow its own administrative procedures as outlined in the Book of Knowledge; and (n.) LINA's failure to review or to consider the terms of the summary plan description.

selectively provided.

Finally, Defendant may have mischaracterized some of the information it relied on to reach its decision to deny benefits. The August 23, 2006 denial letter states that on November 30, 2005 one of Plaintiff's physician's, Dr. Yepuri, "indicated on the form that [plaintiff was] capable of sedentary activity." The Court reviewed this form and finds that to the contrary Dr. Yepuri checked a box indicating Plaintiff had "[s]evere limitations of functional capacity; incapable of minimal (sedentary) activity." The misuse of Dr. Yepuri statement alone may be fatal to file review.

One could easily conclude that Defendant's decision to deny benefits was not "the result of a principled reasoning process supported by substantial evidence." *Kemper Nat'l*, at 2. The Court is mindful that it need not resolve the ultimate question of whether Defendant's denial was arbitrary and capricious. However, the Court is convinced that the cumulative effect of Plaintiff's allegations could, in combination with evidence of bias, lead to a finding of abuse of discretion.

VI.

Here, several of the proposed interrogatories (Interrogs. 3, 4, 10) seek, in part, information regarding the compensation scheme, bonus structures and other pay incentives for Defendant's employees and medical personnel who reviewed Plaintiff's claim.[6] Such information could reveal the extent to which Defendant's "own financial bottom line rather than

---

[6] In addition, Plaintiff seeks information regarding the source of funding for Plaintiff's benefits, and the savings from Plaintiff's receipt of Social Security disability benefits (Interrog. 5, 6, 7). This information seeks to expose the conflict "inherent" whenever a claims decision-maker is also the payor. The Court does not believe that such information is necessary to its evaluation of the conflict of interest in this case.

11

the claimant's medical conditions" influenced employees in the decisions they reached.[7]  *Cf. Bennett*, 321 F. Supp. 2d at 936.  This discovery is relevant to bias in the decision-making process, and the Court will therefore permit it with respect to company-wide compensation, bonus performance evaluation standards, but not with respect to individual compensation records.

Plaintiff also seeks to expose the financial relationship between Defendant and the independent contractors it used in assessing Plaintiff's claim, including HealthSouth and Advantage 2000 (Interrogs. 8, 9, 10).  Again, if the decision-maker relied on the third-party reviewers whose opinions or reports may have been unduly influenced by financial incentives, the Court would benefit from information revealing the compensation arrangements in place.  As discussed above, the mere existence of a long-term financial relationship will not negate a well-reasoned opinion or report.  Nonetheless, discovery which explores, in a limited way the relationships in place would only assist the Court in reviewing the denial of benefits.

Finally, Plaintiff is not entitled to Defendant's internal guidelines, policies which are not, presently part of the administrative record.  (Interrog. 11, Request for Produc. 2, 3).  Although

---

[7] To the extent that any of Plaintiff's proposed interrogatories seek the names and employers of those individuals involved in making the decision on Plaintiff's continued disability benefits, the Court notes that such information should be included in the Administrative Record if it was relied on in reaching the decision.  During oral discussions, Defendant's counsel stated that he would confirm with his client that it has supplied the entire Administrative Record, including any information that had been inadvertently omitted especially with respect to the identity of the medical director (Interrog. 4).

Interrogatories 2, 3, and 7 seek, in part, information on the business and ownership relationship of entities doing business as LINA.  During oral discussions, Plaintiff's counsel expressed a lack of information regarding the nature of CIGNA's relationship to LINA, and the role that each played in the Plan's administration.  Defendant's counsel, explaining that CIGNA was a service mark, agreed to document the business relationship between CIGNA and LINA as well as the employment relationship between Claims Administrator Medha Bharadwaj and LINA and/or CIGNA.

the Department of Labor regulations require Defendant to provide Plaintiff with policy and procedure documents relevant to considering Plaintiff's claim, this does not include documents on which Defendant did not rely. *See* 29 C.F.R. §2560.503-l(m)(8). Defendant has stated that it "did not rely upon the claims manual in making the determination to deny Plaintiff's benefits." (Def.'s Resp. To Pl.'s Mot. for Disc. 9). Unless the information sought constitute a statement of policy or concerning the denied treatment option or benefit for Plaintiff's diagnosis, the regulations do not require Defendant to include that information in the administrative record. *See, Garrett v. The Hartford Life and Accident Ins. Co.*, 2007 WL 2274324 (E.D. Ark. 2007). Accordingly, Plaintiff's requests for information not relied on in Plaintiff's claim are denied.

Being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Discovery (DN#13) is **GRANTED IN PART,** limited to the information from INTERROGATORIES 1, 3, 4, 8, 9, and 10 as described above. The remainder of Plaintiff's discovery requests are **DENIED.**

Date: January 28, 2008

cc:     Counsel of Record

13